May it please the court. My name is Ray Murphy, and I'm here today on behalf of LGD Properties, Inc. We're requesting that this court reverse the finding of the District Court, which granted a summary judgment against my clients, and order a new trial. I would remind the court that this is a de novo proceeding, and that what we are considering here is whether there is a genuine issue of material fact, which should reverse the court's judgment. Because of that, I would like to address equal protection and the 1983 arguments after I briefly cover a few salient factual points that I think need to be made clear that are not apparently addressed in the court's order and are not accurately, in our opinion, addressed in opposing counsel's brief. That is, we began with an alleged issue of a culvert. That issue was resolved March 8, 2013, when there was an agreement entered into between my client, LGD Properties, Inc., and the utility district. Pursuant to that agreement, my client paid $1,500 to the utility district, agreed it would repair the culvert within 30 days, or if it did not, LGD, I'm sorry, the utility district, agreed that it would repair the culvert. For some reason, this is never mentioned in opposing counsel's brief, as far as the obligation on the utility district to do the repair, and the court glosses over it with a brief reference to it, but not the impact of it. From our position, that means there is no culvert issue at any material time that we're discussing in this matter. The constitutional violations that occurred to my client occurred in April of 2013 and May of 2013, after this agreement had already been entered into. Specifically, what are those alleged constitutional violations? Well, Your Honor, we have sued on asserting substantial due process, procedural due process, a taking, and today I want to talk about the equal protection argument. I think the equal protection argument is one that's fairly clear here and fairly straightforward. You agree, don't you, there's no protected property interest in an unissued permit? Your Honor, in this case, the permit that was not issued, the court, I think, actually ruled there wasn't even an application for that permit, and I think that's where an error begins. There's an agreement between the utility district and the homeowners association to withhold any approval of plans. The utility district made that the first step in the application process. So when my client applies, they're denied from even being able to start the application process. So, yes, first we would say there was a right to a permit in this case, so long as we met all the elements, and we were ready and able to meet those. And second, we would say that there is at least the right to go through the application process. We were denied even that. And so, Your Honor, the answer to the question is we believe in this case with regard to the permit, and so you understand what the permit is, is we get our plans approved by the utility district. We submit the necessary funds, and this is from the president of the board of the utility district's testimony. We submit the necessary funds, and then the utility district issues to us a permit, which we sign and one of the employees signs and returns to us. That's it. And so it is not a discretionary review procedure. Once you meet those elements, you're in, you get your permit. Your Honor, going to the issue with regard to the application process, I would point out that not only did they co-opt the HOA process into their process, and therefore, when we make our request to the HOA, we actually are applying for a permit. I would also point out that, and I think the court has found on facts far less than this, that even if we had to go through any additional application process, it was futile at this point. We've been told by the president of the board that it wasn't going to be granted. We've been told by the HOA that there was an agreement with the utility district, and pursuant to that agreement, they were not going to be approving our plans. And we had gone to a meeting with the board where the board told us, you are not going to be getting a permit. And we'd received a letter from the utility district telling us you're not going to get a permit. I refer the court to its case in Ellison v. Connor, 153 F. 3rd, 247, where this court held that a Corps of Engineers letter to a property owner telling them they were not going to get a permit made it sufficient to find that there was no need to go any further in the application process because it was futile. So, Your Honor, next I would go to the issue of, finally, or finally I will point out to the court that there was an agreement between the utility district and the HOA to deprive my client of any approval of plans. My client did submit the plans. My client was specifically told we are not going to grant them until the utility district agrees that they can be granted. And the reason the utility district claims it was withholding approval of the plans is this alleged culvert, which is resolved by that prior agreement I was referring to earlier. So, Judge, with those facts clarified, I want to go ahead and get into the equal protection argument. My understanding under the equal protection argument is that we have to show first that we are substantially similar to another comparator. And then we have to show second that there is no rational relation for the difference in treatment between us and our comparator. I would cite the court to Judge Owen's Lindquist opinion in which Judge Owen referenced that in order to show substantial similarity, it must be prima facie identical in all relevant respects. So what we're looking at are the relevant respects. And, again, I would emphasize to the court the culvert issue is resolved at the point at times that we're talking about. It is no longer pending. There is an agreement. Well, I don't think it's quite that simple. I think unless you get into a class of one, you're dealing with this. This is just regulation of economic development for which any rational basis for doing so is a standard. Your Honor, my understanding from Judge Smith's opinion is that if there is no conceivable rational basis. Well, yeah. Yeah, then we have met that burden. And so to that extent. Yeah, that's what I'm saying. It has to be. That is about as deferential as you can be. Your Honor, I would agree. And you're not going to find cases in which that type of a claim is going to be upheld in terms of economic. If you can move it into a class of one. Well, Your Honor, we. With animus marino. There are a lot of cases you might get somewhere, but that's not what I see here. Well, Your Honor, and we believe this is a class of one, and we have contended that this is a class of one. And if I could, I would point the Court to first identifying who is substantially similar to us. Because there was a difference in, I think, the Court's order and what we recognize to be the class. What the Court's order indicates is that the class is others who have violated the rules of slud. That's never been adjudicated. There's never been any determination that my client violated any rules of slud. The first time that that's ever adjudicated, if it ever was, was in the Court below, and it wasn't an issue before the Court. And, in fact, the Poe's and Counsel, in their brief, identify that the Court must have via v. ruled in their favor on the culvert issue, which is no longer an issue. Your Honor, we do have a substantially similar party here, so at least to cover that, there's another builder called AEC. And this case is very different from the Lindquist case on the facts. And the reason it's different on the facts is, in this case, AEC goes to build on the exact same property, takes our plans, marks our name out on the plans, writes their own name on the plans, submits the exact same plans, while this culvert issue, which is supposedly out there, this dangerous condition, is still out there. The HOA approved the plans. The utility district issued the permit. So there is a distinct, substantially similar comparator. And then getting to the issue of it being rationally related, Your Honor, I would go then to what I think Judge Smith has indicated we have to do, which is we have to attempt to go through the possible reasons that could be provided. And the first one that I come up with, and the one that I think the Poe's and Counsel has come up with, is that, as I said, the culvert was dangerous. However, Your Honor, that can't be a real reason. That has to be pretext. And the reason I say that is if the culvert was dangerous for us to build, then the culvert was dangerous for any other contractor to go out there and build on. Yet they issued permits to someone to build on the very lot that they denied our permit request for. They approved the plans on the very lot with the exact same plans. The plans did not change one iota other than scratching out our name and writing in somebody else's name. The next potential option I see is if it's maybe they're trying to prevent someone who, and again I think this is sort of where they were going, accused of wrongdoing. What if we allege you did wrong? Can we then withhold a permit or plan? And, Your Honor, given that it was resolved through our agreement, the answer is no. We already resolved that. We already paid you money. It was now your obligation to take care of this culvert. Even if you were to go a step further, then the question becomes we know that's not really the issue. I apologize. We know that's not really the way they're proceeding because they've actually issued permits to us, conditional permits, but they issued permits to us. They wouldn't give us water and sewer, which increased our costs, as opposed to all the other builders who applied who didn't have, who got water and sewer. But nonetheless, they did issue us permits. So we know that it wasn't just simple accusation of wrongdoing. That only leaves two options, Your Honor. The only other two options are animus, and we believe there's ample evidence in this record of animus. Not only did they withhold the permits, Your Honor, the opposing party also, I'm sorry, the utility district also issued fees to my client of $12,000. These are really fines that they're calling fees. They refused to provide water service to one of my client's customers until these fees were paid. They issued stop work orders with no basis for the stop work order. They just simply did it. And they clearly indicated at the board meeting that there was animus, that they were not happy with my client and that they believed that they wanted to cease issuing permits and entered into disagreement with the HOA to do so. Your Honor, the final reason that I can come up with is if the government's interest is to force my client to repair the culvert, and again, repair being used very loosely here, it's never clear exactly what that meant, but repair the culvert that the utility district had agreed it would repair. So the only other option is they're just trying to force us to do what they have already committed themselves to do and what we have paid them to do. Repairing the culvert just meant it was too high. Isn't that what they said? They did say, yes, Your Honor, they did say it was too high, but exactly how you repair it was never officially clarified. I mean, obviously you would lower it, but how and to what dimensions, I don't know if that's ever clarified. But I think the point here is that it wasn't our obligation to repair the culvert after that agreement's entered, after we paid them $1,500. Keep in mind this agreement is read to the board. The entire board hears this agreement. The entire board is aware they've received this $1,500. The board is aware, and in fact one of the board members at the meeting actually I believe asked, well, why don't we just go out and repair it ourselves then? And the conclusion was, well, we've now figured out it's a little bit more than we thought it was. And so they're simply trying to pass their obligation to us with no consideration, with no remedy. That is animus. So we do believe we fall in the class of one because the only two bases we can find that are conceivable here are you don't like us and you're trying to force us to do what you've agreed to do under our agreement that you're no longer satisfied with. Your Honor, for that reason we believe we have shown a class of one. We believe that we have established that we were treated with animus, and therefore we believe the next issue to be addressed is 1983. And, Your Honor, the reason I want to address 1983 briefly is, and the lower court really doesn't even reach 1983. They indicate we don't find a constitutional issue, therefore we're not going to find anything with regard to 1983. But I would point out that there's some issue as to the policymaker here, but I would point out to the court that the board actually ratified this decision. The board met about this. The board approved this. The board kept our money. And so we're arguing under St. Louis v. Proprotnick, which is a U.S. Supreme Court case, that there has been a ratification by the board of this action and that the board itself indicated that permits were not going to be issued until we went and fixed the culvert that they had already agreed to fix. Again, Your Honor, I believe this rises to the level of animus. I can't think of another reason. There's no other conceivable reason for them to be doing what they are doing outside of that. I would also point out that the decisions by the Homeowners Association were actually motivated by the instructions from the utility district. There's evidence in the record that the Homeowners Association actually informed the utility district, we will not approve any plans until you indicate. There is no other reason for them to have denied us approval of our plans by the time that this matter, this lawsuit is filed. Everything else has been resolved. Everything else has been presented to the board. What is the relief that you're seeking? I understand that on appeal you want a reversal, but tell me ultimately what relief does your client seek in this case? Well, Your Honor, my client has sued for the deprivation of its rights, the loss of a contract. It lost a contract to build at 300 Beronka. That's the very property that was ultimately awarded. You're just telling me your theory of liability. What relief are you seeking? Your Honor. What relief, if it were remanded, would you ask the district court to give? My client lost $40,000 on the project for 300 Beronka. He had a contract to perform that work and lost it. My client also incurred $10,000 in additional expense because they wouldn't give him water and sewer connections, and that was on 502 Ces Lagos. In addition, we're asking for declaratory relief, and we've asked for attorney's fees. What would the declaratory relief be? Your Honor, the declaratory relief is not really—it really was a state action originally. This was a state case. It was removed. Those claims and the declaratory relief are still really state actions. It has to do with the rates and rules, the way the rates and rules are written, and the fact that they're not supposed to be conspiring with the utility district to withhold approval of plans in order to prevent someone from getting a permit. All right. You've saved time for rebuttal, Mr. Gardner. Thank you, Your Honor. Mr. Gardner. May it please the court. My name is Brett Gardner, and I represent the Ces Lagos Utility District in Rolando, Ramon. I'll be joined at the podium today by Robert Maris, who represents the Ces Lagos Community Services Association, commonly called the HOA in the record below, and Lisa Jones. Your Honors, I think this court can affirm the judgment of the district court dismissing all federal claims against both Sludd and Ramon on two simple grounds. First, LGD has misidentified the final policymaking authority for Sludd, and it has never identified a policy, practice, or custom sufficient to impose Monell liability on the district. Second, LGD Properties has not substantively briefed any issue as to Rolando Ramon in their opening brief to this court and has thus waived all issues against him. Your Honor, while we do believe those two issues are dispositive of all claims against both Sludd and Ramon, we'd also submit that there's a third issue that the court, if it were so inclined, could get to, which is that, and I think Judge Smith alluded to this earlier, LGD does not have any protected property interest in this case, and we believe that fact alone undergirds their entire constitutional theory of the case. So with respect to our first issue, Your Honors, this court has taken direction from the United States Supreme Court in its decision in Monell v. Department of Social Services to categorically hold that a governmental entity does not bear Section 1983 liability for its employees or officials on the basis of responding at superior. Instead, there must be both an unconstitutional policy, which is condoned or authorized by a final policymaking authority that adopted the unconstitutional policy. In this case, LGD misidentified the final policymaking authority as President Rolando Ramon, but the record is clear that the Sludd board sets all matters of policy for the district. I would direct the court's attention to page 2041 of the record, which is the Sludd, an excerpt from the Sludd bylaws, and which states, quote, the board establishes policies in the interest of the district's residents and customers to aid in the process of managing the district's assets. And, quote, the board of directors shall have control and management of all of the affairs of the district. I'd also cite the court to the controlling legislation that controls a district such as Sludd in Chapter 49 of the Texas Water Code, which says that the board of the district shall set all matters of policy for the district. And the record here, the facts here, bear that conclusion out pretty plainly. The April 22, 2013 Sludd board meeting was properly noticed in accordance with state law. Mr. DeBerry, the principal of LGD, attended that meeting and received a provisional permit for 502 Saislaugus Trail, and it's important to note he did not receive that permit from Mr. Ramon. He received that permit after the body politic, somebody made a motion, somebody seconded it, and the board voted to issue LGD a provisional permit for that property. The other judges may have questions about some of the Monell liability that you're getting into, but I hope you'll save plenty of time to talk about the underlying liability issues and whether there was any kind of a constitutional violation. I notice that Mr. Maris has only reserved five minutes, so I hope you're the one that's going to go extensively into the facts and why, in your view, there was no violation. I'm certainly happy to do that, Judge Smith. I think, as I mentioned before, we would posit that the court need not really get to that point because under Section 1983, all the claims against- We understand all that. Okay. Your Honor, then I will go to our point related to- Why was there no constitutional violation, and why was the culvert issue not settled, and go into theories of substantive and procedural violation and tell us why, in your view, there's nothing there. Absolutely, and Judge Smith, I think you alluded to this earlier, but the point is an applicant for an entitlement, such as a permit, has no property interest in that entitlement until the permit has actually been issued. So I think we've got cases, recent cases from this court, Jabari v. City of Allen, Bowlby v. City of Aberdeen, that say once a permit or, in some of those cases, a certificate of occupancy has been issued, you can't summarily revoke that without due process. But that's not the case we have here. There's no allegation, there's nothing in the record that reflects that Mr. Ramone or Sludd took any post facto action on a permit or CO for LGD properties. That doesn't answer the equal protection argument. I'm sorry, Your Honor? That doesn't necessarily answer the equal protection argument. Your Honor, with respect to the equal protection argument, I think the district court had the right of that in that, and my friend in opposition said the same thing, that the first step you have to look at for equal protection is whether a class of one putative plaintiff has put itself or established that it's similarly situated to another member whose constitutional rights were not violated. In this case, I think the district court had the right of that when they said— I thought we answered many of those questions 30 years ago in Shelton. We did, Your Honor. And if Your Honor is referring to, I guess, Shelton 1 with respect to the variance of parking requirements, just so I understand, though. But I think the district court is right that Mr. DeBerry for LGD properties was not similarly situated to AEC construction on 300 Barranca. And I think it's also important to note, first of all, that their equal protection argument only would apply to the property at 300 Barranca, would not apply to the property at 502 St. Sludd. They haven't briefed or there's nothing in the record to reflect any action or similarly situated competitor on 502 St. Sludders Trail. But with respect to 300 Barranca, Mr. Cortisano and AEC construction did not violate or fail to remedy any provision in the slud rates and rules. And so that's really where equal protection analysis falls apart. Mr. Murphy tells us that it was the same lot and the same plans and that one name was scratched out and another name was substituted. That's correct, Your Honor, as to that property. But Mr. LGD properties had also committed violations on 300 Barranca and 502 St. Sludders Trail unrelated to the culvert for— What was the basis for that conduct? What was the basis for scratching out one and putting in another? Well, I'd be speculating on Mr. Cortisano's— How did that happen? What was the basis for it? Your Honor, I can only assume from the testimony that's in the record from Mr. Cortisano. The point is whether there's any conceivable basis for it. That's all you've got to articulate, but I don't even hear you doing that. Your Honor, the articulable basis and the reasonable basis is that the slud can protect the health, safety, and welfare of its community. I don't think there's any— You don't have to say a little more than that. God and country. I mean that doesn't tell me anything. Your Honor, I think the record is clear from Mr. Clark, Dwayne Clark, the operator of Sludd, that this— It doesn't have to be in the record. Any conceivable basis that a lawyer can articulate. But I haven't heard you do that. Your Honor, and I apologize. I'm trying to get there. I'm sorry. I don't want to get in your way. Go ahead. Sludd believed, and the record reflects, that that culvert at 104 Trinidad and the moving violations, moving dirt on the other properties without a permit, presents a danger to adjacent lots in the St. Slavos community. And so Mr. Cortisano in AE Construction had no violations as a builder of 300 Maranca. With respect to—if there are no other questions about the equal protection argument, although I would say that we've identified, and the record is clear, I think it's even implicit in the district court's order that Sludd acted rationally in all respects. But with respect to the due process argument that I think Judge Smith asked about, LGD does not have a protected property interest in this case for a couple reasons. And I think one can be borne out by this court's recent decision in DaVinci Investment Limited Partnership v. Parker, in which case this court reiterated a point that bears repeating here that the courts are to look for explicitly mandatory language that essentially says that if X then Y to determine if a property interest exists. And we just don't have that here. The Sludd rates and rules specify that if a contractor fails to adhere to the requirements of the rates and rules, one of the possible actions that can be taken by Sludd is, quote, disconnection or withholding of water service. Furthermore, section 2.1 of the rates and rules specifies that the district is not required to extend retail service to an applicant in a subdivision where the responsible party of the applicable property has failed to comply with the terms of the policy. So as we briefed and as I just mentioned, LGD failed to comply with the terms of the rates and rules when it placed the culvert at what was identified by Operator Clark as more than five times exceeding the appropriate limit. And the Sludd rates and rules at all material times have required that the Sludd board approve the size and design of culverts within the district. That's in section 4.1 of the rates and rules. It has been at all times material. We have in the record the 2006 version of the rates and rules well before this incident, and it's still in that section. But more to the point, though, I think— Mr. Murphy's suggestion that the culvert issue went away with the $1,500 settlement. And I think, first of all, that is not true because, number one, I think most relevantly, Mr. DeBerry attended the April 22, 2013 board meeting and, again, promised that this issue was not resolved. And the culvert at 104 Trinidad remained too high, and Mr. DeBerry said, I promise I will—I'll get that—it's not an exact quote, but he said he promised that he would fix the culvert within two weeks from that point. So what effect then, if any, did the $1,500 payment and settlement have on that? I think the intent behind that initial agreement was that—was not to shift responsibility, but it was basically a deposit for SLUD in the case. Because the rates and rules specify that SLUD is not responsible for fixing culverts within its own district. That's the responsibility of the homeowner, ultimately, in this case the property builder. But the effect of the $1,500 is SLUD applied that to the ultimate cost, and it's undisputed that SLUD is the ultimate one who paid against its rates of—paid and fixed the culvert at 104 Trinidad. Your Honor, as I mentioned earlier, Jabari v. City of Allen and Bowlby v. City of Aberdeen both stand for the proposition that the entitlement to a due process protected property interest exists once the permit is issued. And same as we cited in the brief in Maloney Gaming Management v. St. Tammany Parish. But I think it's also worth noting, and a salient point by this court and the district court cited this as well, in Vineyard Investment LLC v. City of Madison, in which there were two liquor stores coming into town and the mayor put a freeze on the permit application until the board ultimately voted no. In that case, and I think this might hopefully address Judge Higginbottom's concern, which is that in that case the court held the economic development of the municipality was a rational basis for the city to withhold that permit. Here we suggest that economic development is, while extremely important for a governmental entity, any governmental entity, the health, safety, and welfare of a small governmental entity, and this evidence is not in the record, but the States Logistics Utility District is a district that's the size of a neighborhood. We're talking about approximately 400 homes actually surrounded by six lakes. It's not just the name. Drainage and flooding can be an issue, and so our position, and I think it's well received in the record, is that they have a rational basis to protect the drainage and control of water within their district. Where is this property located exactly? Judge Higginbottom, it's located within, I think, the municipal boundaries of the City of Lucas, Texas. Lucas? Yes, sir, Your Honor. The States Logistics Utility District has some – I don't know that the lines are exactly coterminous with the boundaries of City of Lucas, but they're within that, and they're the sole – States Lagos is the sole controller of the drainage and water issues in that case. Your Honor, if there are no further questions, I'll defer the remainder of my time to Mr. Marris. Yes, Mr. Marris. Thank you. If it pleases the Court, I am Robert Marris. I represent the other two defendants in this case, States Lagos Community Services Association and Lisa Jones. Generally speaking, we agree with the arguments and law cited by the slud. There were some questions directed to Mr. Gardner about salient facts that you all need to consider in rendering your decision in this case. One of those facts that he did not emphasize but I think deserves some consideration, it's pointed out by the district judge on page 10 of his order. In talking about this, what I consider to be a bit of a tempest in a teapot, we're talking about a residential area, one house with a culvert running under the driveway, which is less than a foot too high. The whole thing is under a $5,000 issue. But nevertheless, the slud and the homeowners associations is charged with being sure that building codes are followed. And that led to this issue today. But another important point is that the district judge points out that it was Alex Cortisano, the owner of this Bronco Trailhouse, that chose to terminate the contract. This damage that Mr. Murphy talks about that allegedly cost his client $40,000, the court finds that it was Cortisano who himself decided to terminate the contract. We did. There's zero evidence that either the homeowners association or the slud made Mr. Cortisano go away or somehow took this contract. I thought the owner just got fed up with the delays because his builder couldn't get the permits. He said, okay, I'm going to go with a different builder. That was his choice. It was not a rational choice. This thing had been going on for less than a week when that happened. That does not rise to the level of even a scintilla of evidence the way I see it, and I think that's the way the district court looked at it as well. So there's just no damage here of any consequence. There is a peculiar issue that applies to my clients. My clients were ignored by the appellant here on appeal. They made no points of error. They made no arguments in their briefs about SACE Lagos Community Services Association or Lisa Jones. We contend they waive any right to appeal decision as to us. They filed a motion to strike, which this court has determined it's going to carry into this proceeding today. With respect to that issue, the appellant, LGD, properly points out that we, my clients, although they did allege that we violated federal due process in 1983, we did file a motion for summary judgment with the court from the first two pages of its decision, says our motion is denied. Nevertheless, the court, at page 10 of its decision, says that plaintiff's federal claims under the United States Constitution in 42 U.S.C. 1943 are dismissed with prejudice because the court has granted summary judgment in favor of defendants on plaintiff's claims under federal law. The case is remanded to the 416th Judicial District of Collin County, Texas. Now, I believe that there are some internal inconsistencies in the court's order. First page and page two, he says our motion for summary judgment is denied. Nevertheless, the court does find that all the federal claims are dismissed. I think it's the clear intent of the district judge to dismiss all the federal claims. Otherwise, he wouldn't have remanded the whole case back to state court. It would be inappropriate for the district judge to have remanded a federal 1983 claim back to state court. It's interesting on a jurisdictional point to note that where are my clients, where are the claims against my client? If they weren't dismissed, we don't have a final judgment that can be appealed, which creates a jurisdictional problem. Thank you. Thank you, Your Honor. I would point out, as I believe the honor did, opposing counsel can't come up with a conceivable reason for the denying of this permit. It just simply isn't there. The only reason they offer are fluffy we get to protect people reasons. In reality, they did issue this permit while this dangerous culvert is still out there to someone else. Same plans, same property, same time period. There's simply nothing different between us, and there's no conceivable reason outside of, A, you don't like us, or, B, you want us to do what you. How soon after they issued that permit to Ace did Sludd fix the culvert? It was about a year later, Your Honor. So that culvert, during this entire time that they're trying to pressure us to repair the culvert, they did not repair it. Then basically about April, I believe, of 2014, they actually went out there and repaired the culvert themselves. And, Your Honor, I think that's a salient point that you're making. And so when they talk about nobody's contesting, we didn't eventually repair the culvert, that's true. They eventually repaired the culvert. But the agreement was you were going to take our $1,500 and go repair it. Now you're going to take our $1,500 and go harass us until we simply refuse to do it. I thought I read somewhere that $1,500 was toward the cost. It wasn't agreed that that was what it was going to cost. Your Honor, I would recommend to the court that you look at the agreement yourself because it's very short. It is a very short agreement. But I do want to read from it. It's in the record 2505. And this is the section that opposing counsel leaves out of their brief repeatedly. They never point this out in their brief. And it's the last paragraph. It says, This is to be completed within 30 days from the date of notice. And what that's referencing is LGD repairing the culvert. If this repair has not been done, then SACE Lagos Utility District will take the necessary steps to complete the project and keep the money to cover the cost. And that will take the necessary steps to complete the project. Done. We are finished. And so when they keep coming back to this culvert issue and we want you to go out and fix the culvert, they're simply trying to force us to do something they no longer have any means to force us to do by unconstitutionally withholding permits, by encouraging the Homeowners Association to deny our plans. It would clarify one thing regarding Mr. Maris' client's position here. As I understand it, the district court dismissed all the constitutional claims, including those against his client. And, Your Honor, I would respectfully disagree. Why do we have this court of jurisdiction? And, Your Honor, I agree. We do not have jurisdiction over the HOA, and I point that out in my motion to dismiss. I guess I don't quite understand. Your Honor, as I understand it, the lower court denied their motion for summary judgment, denied the motion for summary judgment filed by their court. Are you sending back these constitutional claims to state court? Yes, Your Honor, I do believe that's the effect. And that has happened in the past. And what this court has held is when there's an erroneous referral of federal issues back to the state court, if the removal was on the basis on which this matter was removed, this court does not have jurisdiction to review that. And, again, that is in my motion to dismiss. That has been addressed by this court already. I apologize, Your Honor. Your Honor, so going back to the issue of equal protection, I do want to emphasize that it appears to us they can't come up with a conceivable reason. We have someone who is substantially similarly related. They talk about policy. I thought they said that there were some other violations, that you had moved dirt, your client had moved dirt without permits, and the culvert issue was outstanding. Your Honor, there was some reference that he made to moving dirt. I will tell you, at that board meeting, it was never addressed. The thing that was addressed was are we going to fix this culvert or not. And I will also tell you that I don't think that's in their rates and rules. Did your client say at the board meeting that he would fix the culvert? Your Honor, yes, but let me say this. The way the meeting began was we were going to deny all permits to you going forward. You will have no permits if you do not agree to do these things. And so my client is in a situation where he can't get any projects going. He has a project that he's already got committed on. The owners have told him they're going to terminate if he can't get this going. So he was at that point under duress and was willing to say just about anything so he could get that conditional permit. So did he say that? Yeah. Was the agreement already resolved? Yes. Was there any consideration offered to him for doing that? No. There's no consideration. They don't have discretion to deny this permit. Once he meets those criteria, once he does the things he's supposed to do, they're supposed to issue the permit. The only thing that's holding him up is they're going to the HOA and they're asking the HOA to not approve his plans. That's it. That's the only hang-up here. You still got a breach of contract claim? No, Your Honor. We wouldn't have a breach of contract claim at this point. At this point, they have gone and they've fixed the culvert. So this is not a breach of contract claim. What this is is about their wrongful actions. Aren't you arguing that their failure to fix the culvert was the excuse they gave and caused your guy, your client, your owner to terminate your contract? Your Honor. And had they lived up to their— Your Honor, specifically the reasons he put forth in his letter to us of why he was terminating his contract was because you can't get approval of my plans from the HOA and the utility district. He did not reference anywhere in there anything about the culvert because it's kind of a non-issue to him. At least that's my recollection. To the best of my recollection. All right. Your case is under submission, Mr. Larson. Thank you. I appreciate it. That's the case for today.